**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Grace Amato, <br><br>    Plaintiff, <br><br>v. <br><br>Holladay Bank and Trust, et al., <br><br>    Defendants. | No. CV-20-01013-PHX-DWL <br><br>**ORDER** |

  In April 2020, Plaintiff Grace Amato ("Plaintiff") initiated this action by filing a complaint in state court. Defendant Holladay Bank and Trust ("Holiday Bank") then timely removed the action to this Court. (Doc. 1.) In the removal notice, Holladay Bank asserted that diversity jurisdiction exists because the parties are completely diverse—Plaintiff is a citizen of Ohio, Holladay Bank is a citizen of Utah, and Defendant Don Fletcher ("Fletcher") is a citizen of Arizona—and further asserted that, although 28 U.S.C. § 1441(b)(2) ordinarily prohibits removal based on diversity jurisdiction when one of the defendants (here, Fletcher) is a citizen of the forum state, Plaintiff had "fraudulently joined" Fletcher to evade federal jurisdiction. (Doc. 1 ¶¶ 7-8.)

  Plaintiff has now moved to remand, arguing that her decision to name Fletcher as a defendant was not fraudulent. (Doc. 7.) For the following reasons, the Court agrees. Accordingly, Plaintiff's motion to remand will be granted.

…

…

**BACKGROUND**

I.   Underlying Facts

The following facts are derived from the complaint, the documents attached to the complaint, and the documents submitted by the parties as part of the motion-to-remand process.[1] Plaintiff was once married to non-party Frank Colosi ("Colosi"). (Doc. 1-1 at 6-7 ¶ 29.) Pursuant to the terms of their divorce, Colosi was required to make spousal support payments to Plaintiff. (*Id.*) He failed to do so. (*Id.*) At some unspecified date, Plaintiff sued Colosi in Ohio state court, and in mid-2014 she secured a $180,000 judgment against him. (*Id.* at 6-7 ¶¶ 28-29, 31.)

The complaint alleges that Colosi and his new wife, Sandra "Sandy" Colosi, engaged in financial shenanigans in an attempt to disguise their community property as Sandy Colosi's sole and separate property. Specifically, in 2012, the Colosis decided to purchase real property located at 10050 E. Mountainview Lake Drive, Unit 14, Scottsdale, Arizona ("the Property"). (*Id.* at 5 ¶ 8.) To finance this purchase, the Colosis jointly applied, "as a married couple," for a loan from Holladay Bank. (*Id.*) When the application was approved, the Colosis jointly signed the $432,000 promissory note and the notice of final agreement. (*Id.* at 5 ¶¶ 9, 11; *see also* Doc. 1-1 at 21-22, 27 [actual note and notice].) However, when it came time to execute the deed of trust, Frank Colosi's name was nowhere to be found. Instead, the deed was "among Sandy Colosi, a married woman as her sole and separate property, and Mary B. Pack, an unmarried, as to Parcel 1"—the Property[2]—"and Harlan F. Gill, an unmarried man and Sandra Gill Colosi,[3] a married woman as her sole

---

[1]   As discussed *infra*, the Court is not limited to the face of the complaint when evaluating a claim of fraudulent joinder.

[2]   Although the deed of trust appears to identify the Property at 10050 E. Mountainview Lake Drive, Unit 14, Scottsdale, Arizona as composed of two separate parcels of real property, "Parcel 1" and "Parcel 2," the descriptions of the parcels identify separate and likely nonadjacent lots that could not likely be combined and given one mailing address. The Property (10050 E. Mountainview Lake Drive, Unit 14, Scottsdale, Arizona) has been described elsewhere as comprising only Parcel 1. (Doc. 1-2 at 29; Doc. 4-1 at 2; Doc. 4-2 at 3.)

[3]   It's not clear why a person would be described by a nickname and a formal name within the same sentence, but "Sandy Colosi" and "Sandra Gill Colosi" are the same person.

and separate property, as to Parcel 2." (Doc. 1-1 at 6 ¶ 18; *see also* Doc. 1-1 at 29 [actual deed].) The word "Trustor" is defined in the deed as "Sandy Colosi, Mary B. Pack[4] and Harlan F. Gill." (Doc. 1-2 at 7.) Frank Colosi did not sign the deed of trust. (Doc. 1-1 at 6 ¶ 18; Doc. 1-2 at 8.) This, apparently, was an attempt to make it appear that Frank Colosi didn't have any interest in the Property. (Doc. 1-1 at 5-6 ¶¶ 14-27.) Nevertheless, the deed of trust referred to the $432,000 promissory note signed by the Colosis as "the Note" (Doc. 1-2 at 7) and required the "Trustor" to "perform all their respective obligations under the Note" (Doc. 1-1 at 30).

On November 14, 2016, the $180,000 judgment awarded to Plaintiff in the Ohio state-court litigation was recorded in Maricopa County, Arizona. (*Id.* at 7 ¶ 33.)

At some point in 2017, Plaintiff filed a lawsuit against the Colosis in Maricopa County Superior Court, arguing that she was entitled to force a sale of the Property to satisfy her outstanding judgment. (*Id.* at 7 ¶ 37).

On November 2, 2018, while Plaintiff's state-court lawsuit against the Colosis was still pending, Holladay Bank issued a "Notice of Past Due Loan" to Sandy Colosi. (Doc. 1-1 at 8 ¶ 43.) Holladay Bank did not accelerate the loan at this time. (*Id.* at 8 ¶ 44.)

On January 24, 2019, a judge of the Maricopa County Superior Court entered a stipulated judgment between Plaintiff and Sandy Colosi. (Doc. 1-2 at 11-13.) Among other things, the judgment specified that the Colosis' "marital community" was liable to Plaintiff for $202,665.21 and that Plaintiff was "entitled to the appointment of a receiver . . . to take possession and sell" the Property. (*Id.*)

On February 2, 2019, Fletcher, who served a "dual role" as both trustee under the deed of trust and as Holladay Bank's attorney (Doc. 1-1 at 18 ¶ 186), recorded a "Notice of Trustee's Sale" concerning the Property. (*Id.* at 8 ¶ 47; *see also* Doc. 1-2 at 29-31 [actual notice].) This notice, which identified Fletcher as the trustee and Holladay Bank as the beneficiary, explained that "[t]he beneficiary under the . . . Deed of Trust has accelerated

---

[4] The complaint alleges that "Mary Pack did not sign a deed of trust to Holladay Bank." (Doc. 1-1 at 6 ¶ 25.) However, the deed of trust seems to bear the signature of Mary B. Pack. (Doc. 1-2 at 8.) The line where Harlan F. Gill was to sign is blank. (*Id.*)

the Note secured thereby and has declared the entire principal balance, as well as any and all other amounts due in connection with said Note and/or Deed of Trust, immediately due and payable." (Doc. 1-2 at 30.) The notice specified that the trustee's sale would take place on May 9, 2019. (*Id.* at 29.)

On February 15, 2019, upon another stipulation between Plaintiff and Sandy Colosi, the superior court judge issued a receivership order. (Doc. 1-1 at 7 ¶ 38; *see also* Doc. 1-2 at 16-24 [actual order].) The order appointed Holly Poty ("the Receiver") to serve as the Receiver, authorized the Receiver to take immediate possession of the Property and market and sell it, and instructed the Receiver to distribute any remaining proceeds (after paying her commission and certain expenses) in accordance with Arizona law and pursuant to the stipulation between Plaintiff and Sandy Colosi for entry of judgment. (Doc. 1-2 at 16-22 ¶¶ 1, 4, 7, 15.) The order also specified that "no one having actual notice of this order shall interfere with the Receiver's efforts" and enjoined "all persons who receive actual or constructive notice of this Order . . . from disturbing the assets of [the] Receivership, or from prosecuting any new proceedings (including collection or enforcement proceedings) that involve the Receiver and Receivership Property . . . unless such person or persons first obtains the permission of [the superior court]." (*Id.* at 21 ¶ 12, 23 ¶ 19.)

The complaint alleges that on March 1, 2019, Holladay Bank "was provided with a copy of" the receivership order and "had actual notice of" it (Doc. 1-1 at 8 ¶¶ 52-53) and that, despite receiving this notice, Holladay Bank "took no action to cancel or postpone the Trustee's Sale" (*id.* at 8 ¶ 55). To the contrary, the complaint alleges that, on March 6, 2019, Holladay Bank communicated with the Receiver about the loan balance and the past due balance. (*Id.* at 8-9 ¶¶ 56-57.) The complaint further alleges that Holladay Bank claims it didn't receive notice of the receivership order until April 9, 2019, but it "took no action to cancel or postpone the Trustee's Sale" at that point, either. (*Id.* at 9 ¶¶ 58-59.)

On April 16, 2020, Plaintiff's counsel sent a letter to Fletcher stating that "it [is] my client's intention to pay the funds necessary to reinstate the . . . Deed of Trust" and asking Fletcher to "please provide the exact amount necessary to reinstate the trust deed." (Doc.

21 at 5.)[5]

On April 23, 2019, Fletcher responded by sending a letter to Plaintiff stating that the "reinstatement amount" for the Property was $56,400.21. (Doc. 1-1 at 9 ¶ 60; *see also* Doc. 21 at 10-11 [actual letter].) The complaint alleges this amount was overstated in two respects: first, it included a $128.16 late fee that was not yet owed (Doc. 1-1 at 9 ¶¶ 61-63); and second, it included a claim for $24,102.62 in default interest, which was improper because Holladay Bank had not yet accelerated the loan (*id.* at 9 ¶¶ 64-67). The complaint alleges that Fletcher knew at the time he transmitted the letter that it "included amounts that were not authorized by fact or by law" "due to his dual role as trustee and attorney for Holladay [Bank]." (*Id.* at 9 ¶ 69, 18 ¶ 186.)

On May 1, 2019, Holladay Bank asserted that the total balance on the loan was $393,563.88, which included a total past due amount of $19,939.37. (*Id.* at 9-10 ¶¶ 71-75.) These figures did not include any default interest. (*Id.* at 10 ¶ 76.)

On May 6, 2019—three days before the trustee's sale that had previously been scheduled for May 9, 2019—Holladay Bank asked the judge who had issued the receivership order for an emergency hearing to obtain relief from the order. (*Id.* at 10 ¶ 77.) The documents attached to Defendants' motion to dismiss establish that the judge initially enjoined the trustee's sale but then issued an order allowing the trustee's sale to proceed on July 16, 2019. (Doc. 4-2 at 9-14.)

On May 9, 2019, Fletcher reported that the "reinstatement amount" for the Property was $72,689.68. (Doc. 1-1 at 10 ¶ 78.) The new amount included $26,918.54 in default interest (*id.* at 10 ¶ 79), $22,284.50 in attorneys' fees (*id.* at 10 ¶ 80), a $2,250 collection fee (*id.* at 10 ¶ 81), and a $425 appraisal fee (*id.* at 10 ¶ 82). The complaint alleges that the $72,689.68 figure was both overstated and inconsistent with "the balance claimed due by

---

[5] The parties did not submit this letter as part of the motion-to-remand briefing process. Instead, Defendants submitted it after reviewing the Court's tentative ruling. (Doc. 21.) Although this approach is improper—the issuance of a tentative ruling is not an invitation to expand the record by submitting new evidence—the Court will consider the letter here because Plaintiff was afforded an opportunity to address it during oral argument and because it does not alter the conclusion in the tentative order that the motion to remand should be granted.

Holladay [Bank]." (*Id.* at 10 ¶¶ 83-84.) The complaint also alleges that Fletcher again knew this reinstatement amount was "not authorized by fact or by law." (*Id.* at 10 ¶ 84). And the complaint suggests that Fletcher "refused to take corrective action after being advised that the amounts were incorrect." (*Id.* at 18 ¶ 188.)[6]

On June 23, 2019, Holladay Bank provided a "Payoff Statement" to a title company. (*Id.* at 11-12 ¶¶ 88-104.)[7] It stated that the total balance due as of July 1, 2019 was $476,188.68, which included eight months' worth of late fees (which totaled $1,025.28) and default interest (which totaled $51,324.37). (*Id.* at 11 ¶ 89-93.) The complaint alleges that "the fact that Holladay charged late fees is inconsistent with the claim that Holladay accelerated the loan" because Holladay Bank was not entitled to continue charging late fees after accelerating the loan and Holladay Bank could only charge default interest upon acceleration. (*Id.* at 11-12 ¶¶ 95-106.)

On July 15, 2019—that is, one day before the trustee's sale was scheduled to occur—Holladay Bank received $100,217.65 to "reinstate the deed of trust." (*Id.* at 13 ¶¶ 119-21.) The complaint does not identify who made the payment, and Defendants assert in their motion that they are unaware of the payor's identity. (Doc. 4 at 5 & n.4.) In any event, in light of the payment, the trustee's sale did not occur on the previously scheduled date of July 16, 2019.

In September 2019, the Property was sold by the Receiver. (Doc. 4-3 at 2-11.) Plaintiff did not receive of the resulting proceeds. (*Id.* at 11.) Holladay Bank was paid an additional $384,979.85 from the sale of the Property. (Doc. 1-1 at 13 ¶ 121.)

II.   Plaintiff's Alleged Damages

The complaint alleges that Holladay Bank ultimately received $485,197.30 based on the reinstatement of the deed and subsequent sale of the Property, which exceeded the

---

[6]   The complaint does not appear to allege when Fletcher was advised that the amounts were incorrect, or by whom, nor is it entirely clear whether he was advised that the amounts were incorrect in his April 23, 2019 letter, in his May 9, 2019 report, or both.

[7]   Although the complaint does not specifically state when the Payoff Statement was provided to the title company, the statement in paragraph 99 that the payoff amounts were "as of June 23, 2019" suggests this was the relevant date.

- 6 -

amount to which Holladay Bank was entitled. (Doc. 1-1 at 13 ¶¶ 123-125.) Thus, the complaint alleges that "Holladay's conduct resulted in Holladay receiving money that actually belonged to the Receivership Estate or its creditors"—money to which Plaintiff was ultimately entitled. (*See, e.g., id.* at 15-16 ¶¶ 151-56, 158-62.) Plaintiff also seeks bad faith damages from Holladay Bank. (*Id.* at 15 ¶¶ 145-47.)

The complaint also alleges that Defendants' conduct caused Plaintiff to suffer a different category of pecuniary harm. Specifically, it alleges that "[t]he conduct of Holladay and . . . Fletcher caused damages to . . . [Plaintiff] and the Receivership Estate" in the form of "additional expenses for preventing the trustee's sale" and "additional time and expense associated with the sale of the Property." (*Id.* at 17 ¶ 177.) Plaintiff also claims to have been damaged by "significantly increased balances charged by Holladay," which resulted from inaccurate information provided by Fletcher. (*Id.* at 17-19 ¶¶ 180-93.)

III.   Procedural History

On April 17, 2020, Plaintiff initiated this action by filing a complaint in Maricopa County Superior Court. (Doc. 1-1 at 4-19.)[8]

On April 22, 2020, Holladay Bank was served. (Doc. 1 ¶ 5; Doc. 1-1 at 2-2.)

On May 22, 2020, Fletcher was served. (Doc. 7 at 11.)

That same day, Holladay Bank timely removed the action to this Court. (Doc. 1; Doc. 17 at 5.)

On May 29, 2020, Holladay Bank filed a motion to dismiss (Doc. 4), which Fletcher later joined and supplemented (Doc. 6). Afterward, Plaintiff responded to both filings (Docs. 9, 13), Holladay Bank filed a reply (Doc. 10), and Fletcher filed a joinder and supplement (Doc. 15).

On June 12, 2020, Plaintiff filed a motion to remand. (Docs. 7, 8.) Afterward, Holladay Bank filed a response (Doc. 11), which Fletcher joined (Doc. 12), and Plaintiff filed a reply (Doc. 14).

---

[8]   Fletcher's spouse, Christine Fletcher, is also named as a defendant for the sole purpose of maintaining claims against the Fletchers' marital community.

On August 18, 2020, in response to an order to show cause concerning the applicability of 28 U.S.C. § 1441(b)(2) (Doc. 16), Plaintiff established that Fletcher had been served about three hours before Holladay Bank filed the removal notice. (Doc. 17.)

On September 1, 2020, the Court issued a tentative ruling. (Doc. 20.)

On September 3, 2020, Fletcher filed a "notice." (Doc. 21.) Enclosed with the notice were two documents that had not been previously made part of the record: (1) Plaintiff's counsel's April 16, 2019 letter to Fletcher and (2) Fletcher's April 23, 2019 response letter. (*Id.*)

On September 18, 2020, after a continuation request by the parties, the Court heard oral argument. (Doc. 24.)

**DISCUSSION**

I.  Legal Standard

The general rule is that a civil action may not be removed to federal court on the basis of diversity jurisdiction if any of the "properly joined and served" defendants is a citizen of the forum state. *See* 28 U.S.C. § 1441(b)(2) ("A civil action otherwise removable solely on the basis of the jurisdiction under section 1332(a) of this title may not be removed if any of the parties in interest properly joined and served as defendants is a citizen of the State in which such action is brought."); *Lively v. Wild Oats Markets, Inc.*, 456 F.3d 933, 939 (9th Cir. 2006) ("[Section] 1441(b) confines removal on the basis of diversity jurisdiction to instances where no defendant is a citizen of the forum state."). Here, Holladay Bank asserts that Fletcher, a citizen of the forum state, was not "properly joined" and, instead, was "fraudulently joined" for the purpose of preventing removal.

"There are two ways to establish fraudulent joinder: (1) actual fraud in the pleading of jurisdictional facts, or (2) inability of the plaintiff to establish a cause of action against the non-diverse party in state court." *Grancare, LLC v. Thrower by & through Mills*, 889 F.3d 543, 548 (9th Cir. 2018) (internal quotation marks omitted). Here, Holladay Bank seeks to rely on the second way. "Fraudulent joinder is established the second way if a defendant shows that an individual joined in the action cannot be liable on any theory. But

if there is a *possibility* that a state court would find that the complaint states a cause of action against any of the resident defendants, the federal court must find that the joinder was proper and remand the case to the state court." *Id.* (internal quotation marks, brackets, and citation omitted).

"[T]here is a general presumption against fraudulent joinder," which "must be proven by clear and convincing evidence." *Hamilton Materials, Inc. v. Dow Chem. Corp.*, 494 F.3d 1203, 1206 (9th Cir. 2007). Thus, "[a] defendant invoking federal court diversity jurisdiction on the basis of fraudulent joinder bears a heavy burden." *Grancare*, 889 F.3d at 548.

Contrary to Holladay Bank's argument,[9] courts do not apply the *Iqbal/Twombly* pleading standard when evaluating the sufficiency of the claims against a defendant who is alleged to have been fraudulently joined. As the Ninth Circuit clarified in *Grancare*, "the test for fraudulent joinder and for failure to state a claim under Rule 12(b)(6) are not equivalent." 889 F.3d at 549. This is because "[a] standard that equates fraudulent joinder with Rule 12(b)(6) conflates a jurisdictional inquiry with an adjudication on the merits." *Id.*

Instead, the standard for evaluating fraudulent joinder "is similar to the 'wholly insubstantial and frivolous' standard for dismissing claims under Rule 12(b)(1) for lack of federal question jurisdiction." *Id.* "The relative stringency of the standard accords with the presumption against removal jurisdiction," which requires courts to "strictly construe the removal statute and reject federal jurisdiction if there is any doubt as to the right of

---

[9] Doc. 11 at 2-3 (under the heading "Pleading Standards," citing *Iqbal* for the proposition that "[c]onclusory statements and legal conclusions couched as factual allegations are not entitled to the presumption of truth" and that the complaint "must go beyond the mere conceivable and instead make out a right to relief that is plausible on its face"); *id.* at 4 ("[A]lthough Plaintiff attempts to create a material fact at issue as to Mr. Fletcher's role in the transaction and whether he knew (or should have known) that such information was false, Plaintiff's allegations must be plausible. To accept Plaintiff's position as true, one would have to assume that Mr. Fletcher himself calculated amounts for the reinstatement, and his calculations somehow differed from Holladay Bank's calculations. Or perhaps that Mr. Fletcher had reason to know that the amounts were not proper. Plaintiff's Complaint does not allege any such plausible theory, and simply relies on conclusory allegations that *Iqbal* prohibits.").

removal in the first instance." *Id.* at 550 (internal quotation marks omitted).

Finally, courts are not limited to the face of the complaint when evaluating a claim of fraudulent joinder. The Ninth Circuit has specifically recognized that "[t]he defendant seeking removal to the federal court is entitled to present the facts showing the joinder to be fraudulent." *McCabe v. Gen. Foods Corp.*, 811 F.2d 1336, 1339 (9th Cir. 1987). Thus, "[f]raudulent joinder claims may be resolved by 'piercing the pleadings' and considering summary judgment-type evidence such as affidavits and deposition testimony." *Morris v. Princess Cruises, Inc.*, 236 F.3d 1061, 1068 (9th Cir. 2001) (citation and internal quotation marks omitted). "However, the court must resolve all disputed questions of fact and all ambiguities in the controlling state law in favor of the non-removing party." *Tofighbakhsh v. Wells Fargo & Co.*, 2010 WL 2486412, *1 (N.D. Cal. 2010) (citations and internal quotation marks omitted).

II. <u>Analysis</u>

Only two of the claims in the six-count complaint are directed against Fletcher. First, in Count Five, Plaintiff asserts a claim against Fletcher for "Negligence (Violation of Court Order)." (Doc. 1-1 at 17.) Plaintiff's theory here is that Fletcher violated the receivership order—which, as noted, prohibited anybody with "actual or constructive notice" of the order from taking steps "in any way" to "disturb[] the assets of the Receivership" or "prosecut[e] any new proceedings . . . that involve the Receiver and Receivership Property" without prior judicial approval (Doc. 1-2 at 23)—by not cancelling, and instead continuing to take steps to pursue, a trustee's sale of the Property after becoming aware of the order. (Doc. 1-1 at 17 ¶¶ 170-75.) Plaintiff contends she was injured by this conduct because it resulted in "additional expenses for preventing the trustee's sale" and "additional time and expense associated with the sale of the Property," ultimately causing "[Plaintiff] and the Receivership Estate to recover less money than would have been recovered in the absence of their negligence." (*Id.* at 17 ¶¶ 177-78.)

Meanwhile, in Count Six, Plaintiff asserts a claim against Fletcher for "Negligence Per Se (A.R.S. § 33-813)." (Doc. 1-1 at 17-18.) Plaintiff's theory here is that she had the

- 10 -

right under A.R.S. § 33-813 to reinstate the deed of trust on the Property, that Fletcher had a corresponding "duty to provide accurate information regarding the amounts due to reinstate," and that Fletcher violated that duty by providing an inaccurate and inflated reinstatement figure. (*Id.* at 17-18 ¶¶ 180-90.) Plaintiff further alleges that Fletcher made this error with "knowledge of the facts that rendered the reinstatement amount incorrect." (*Id.* at 18 ¶ 185.) Finally, Plaintiff alleges that she was harmed because, even though she "was ready, willing, and able to reinstate" at the correct amount, "[a]s a direct result of the inaccurate information regarding the amounts to reinstate, [she] was unable to reinstate as intended." (*Id.* at 18 ¶¶ 191-92.) This inability to reinstate, in turn, resulted in Holladay Bank charging "significantly increased balances." (*Id.* at 19 ¶ 193.)

**A.     Holladay Bank's Arguments**

1.     Response To Motion To Remand

In its response to Plaintiff's motion to remand, Holladay Bank argues that Plaintiff's claims against Fletcher should be deemed fraudulent for four reasons: "(a) the Superior Court allowed the Trustee's Sale to move forward; (b) the Trustee's Sale never even took place; (c) Mr. Fletcher was acting entirely for Holladay Bank and has immunity per multiple Arizona Statutes; and (d) Plaintiff does not claim that she (or the Receiver) paid any reinstatement amounts." (Doc. 11 at 2.)

These arguments lack merit. First, although it is true that the judge who issued the receivership order ultimately allowed Holladay Bank to resume its pursuit of a trustee's sale—a fact that Plaintiff conspicuously omits from the complaint—the documents submitted by Defendants show that the judge granted this approval on May 6, 2019. (Doc. 4-2 at 9-14.) The complaint alleges that Holladay Bank (and, constructively, Fletcher) received notice of the receivership order at least one, and possibly two, months before the May 6, 2019 hearing (Doc. 1-1 at 8-9 ¶¶ 52-53, 58) and that Fletcher violated the order during the period before the hearing by (1) not cancelling the trustee's sale (*id.* at 17 ¶¶ 170-75) and (2) engaging in certain pre-hearing conduct—specifically, the issuance of an inaccurate reinstatement letter on April 23, 2019—that was intended to affirmatively

advance the trustee's sale (*id.* at 9 ¶¶ 60-70).

There is a non-frivolous argument that Fletcher's failure to cancel the trustee's sale, after receiving notice of the receivership order, constituted a violation of that order.[10] As noted, the order enjoined "all persons who receive actual or constructive notice of this Order . . . from disturbing the assets of [the] Receivership, or from prosecuting any new proceedings (including collection or enforcement proceedings) that involve the Receiver and Receivership Property . . . unless such person or persons first obtains the permission of [the superior court]."  (Doc. 1-2 at 21 ¶ 12, 23 ¶ 19.)  Here, the key clause is the prohibition against "disturbing" the Property.  Although Defendants argue, with some force, that mere inaction by Fletcher (*i.e.,* failing to cancel a previously scheduled trustee's sale) can't fairly be characterized as "disturbing" the Property, Plaintiff counters that the overhang of the pending trustee's sale during the period before the May 6, 2019 hearing had the effect of "disturbing" the Property by interfering with the Receiver's ability to market and sell it for the highest possible price during this period.  Regardless of whether Plaintiff's argument will ultimately carry the day, it is not "wholly insubstantial and frivolous."  That is all that matters for purposes of fraudulent joinder.  And given this backdrop, the fact that the judge ultimately allowed the trustee's sale to proceed doesn't necessarily undermine Plaintiff's claim in Count Five that she suffered some harm, in the form of increased transaction costs, *i.e.,* "additional time and expense," arising from Fletcher's inaction during the period before judicial approval was obtained.

Second, and in a related vein, although Holladay Bank is correct that a trustee's sale never took place—another fact that is conspicuously omitted from the complaint—this is something of a red herring with regard to Count Five.  Again, Plaintiff's claim is that Fletcher's failure to cancel the trustee's sale after receiving notice of the receivership order

---

[10]  In the tentative order, the Court focused on Fletcher's issuance of the April 23, 2019 order as the key event underlying Count Five.  During oral argument, Plaintiff's counsel clarified that Count Five is premised more broadly on Fletcher's failure to cancel the trustee's sale upon receiving notice of the receivership order and explained that Fletcher's issuance of the April 23, 2019 letter was simply one component of the overall course of challenged conduct.

resulted in additional transaction costs associated with the entire process. The existence of such costs isn't necessarily inconsistent with the fact that the Property was ultimately sold by the Receiver, not via a trustee's sale.

Before addressing Holladay Bank's remaining arguments, an additional point is worth noting. The complaint doesn't purport to quantify the "additional expenses" that Plaintiff and the Receiver incurred as a result of Fletcher's alleged negligence during the period before the May 6, 2019 hearing. (Doc. 1-1 at 17 ¶ 177.)[11] If the complaint were subject to review under *Iqbal/Twombly*, these allegations would likely be deficient due to their vague and conclusory nature. Nevertheless, the standard here is different. Again, the question for fraudulent-joinder purposes is whether the claim is "wholly insubstantial and frivolous," such that there is no "possibility that a state court would find that the complaint states a cause of action against any of the resident defendants." *Grancare*, 889 F.3d at 549. Here, it is possible, particularly in light of the Arizona courts' liberal pleading standards, that this claim would survive a motion to dismiss in state court. *See generally Cullen v. Auto-Owners Ins. Co.*, 189 P.3d 344, 346-47 (Ariz. 2008) ("Arizona follows a notice pleading standard, the purpose of which is to give the opponent fair notice of the nature and basis of the claim and indicate generally the type of litigation involved. . . . Arizona has not revised the language or interpretation of Rule 8 in light of *Twombly*.") (citations and internal quotation marks omitted).

Holladay Bank's third argument is that Fletcher, as a trustee, enjoys immunity from liability under A.R.S. §§ 33-807(E) and 33-820(A). (Doc. 11 at 3-6.)

Section 33-807(E) provides:

> The trustee need only be joined as a party in legal actions pertaining to a breach of the trustee's obligation under this chapter or under the deed of trust. Any order of the court entered against the beneficiary is binding upon the trustee with respect to any actions that the trustee is authorized to take by the

---

[11] Plaintiff's motion papers also allude to those expenses in vague, undeveloped fashion. (Doc. 14 at 7, emphasis added ["Holladay's argument that Fletcher and Holladay ultimately complied with the Court Order and obtained permission of the Court to proceed with a trustee's sale does not excuse their failure to initially comply with the Order. *Their initial conduct caused damages*, and Amato is entitled to recover those damages. Count 5 properly asserts a cause of action against both Fletcher and Holladay."].)

>trust deed or by this chapter. If the trustee is joined as a party in any other action, the trustee is entitled to be immediately dismissed and to recover costs and reasonable attorney fees from the person joining the trustee.

*Id.*

In *Puzz v. Chase Home Finance, LLC*, 763 F. Supp. 2d 1116 (D. Ariz. 2011), the court interpreted the third sentence of § 33-807(E) in the context of the first two sentences and concluded that "to avoid an unreasonable result, the phrase 'any other action' in the provision's third sentence must not be interpreted broadly to mean any other action whatsoever, but rather should be interpreted to mean any action pertaining to the trustee's authority to act that does not allege that the trustee breached an obligation resulting from the deed of trust or statute." *Id.* at 1125. "Thus, to receive the protection of A.R.S. § 33–807(E) as to any particular claim, a trustee must establish three elements. First, that the trustee has been named as a defendant in the claim. Second, that the claim relates to the authority of the trustee to act, given to the trustee either by the trust deed or Arizona statutes regulating trust deeds. Third, that the claims do not allege that the trustee breached any of his or her obligations that arise under either the deed of trust or the statutory chapter of the Arizona Revised Statutes that regulates deeds of trust." *Id.*

Here, Holladay Bank has not demonstrated that the second element of this test—that is, that "the claim relates to the authority of the trustee to act, given to the trustee either by the trust deed or Arizona statutes regulating trust deeds"—is satisfied with respect to Count Five. That claim, again, alleges that Fletcher negligently violated a court order by failing to cancel a previously scheduled trustee's sale. Holladay Bank has not identified any provision of the deed or any Arizona statute pertaining to a trustee's authority with respect to court orders, and Fletcher acknowledged in a different motion that "Count 5 does not directly pertain to a breach of Fletcher's obligations under the deed of trust or the provisions of Title 33, Chapter 6.1, regulating deeds of trust. Rather, it is based on negligent violation of a Court order . . . ." (Doc. 6 at 3.)[12] Thus, Holladay Bank has not

---

[12] *See also* Doc. 14 at 2 (Plaintiff's reply: "The claim that Fletcher violated a court order does not relate to Fletcher's authority to act as provided by the trust deed or Arizona statute.").

- 14 -

demonstrated that it is obvious an Arizona court would deem § 33-807(E) applicable to Count Five under the somewhat unusual circumstances of this case, such that the claim should be considered "wholly insubstantial and frivolous."[13]

As for A.R.S. § 33-820(A), that statute provides that "[i]n carrying out his duties under the provisions of this chapter or any deed of trust, a trustee, shall when acting in good faith, have the absolute right to rely upon any written direction or information furnished to him by the beneficiary." This provision appears unrelated to Count Five, and Holladay Bank has done little to argue to the contrary. Holladay Bank's immunity arguments concerning Count Five are premised almost exclusively on § 33-807(E). One passing, undeveloped citation to § 33-820(A) appears in the final sentence of the relevant portion of Holladay Bank's brief, without any argument as to how the statute applies. (Doc. 11 at 6.)[14] This is insufficient to overcome the heavy presumption against fraudulent joinder.[15]

Holladay Bank's fourth argument pertaining to fraudulent joinder is that "Plaintiff does not claim that she (or the Receiver) paid any reinstatement amounts." (Doc. 11 at 2.) This misses the mark because, like many of Holladay Bank's other arguments, it seems directed toward Count Six and doesn't acknowledge that Count Five seeks recovery, at least in part, for the increased transaction costs that arose from Fletcher's alleged violation of a court order.

…

…

---

[13] So long as one count against Fletcher survives, Fletcher is not fraudulently joined. Plaintiff argues that Count Six alleges a breach of obligations under A.R.S. § 33-813, which would make § 33-807(E) inapplicable to that count as well. The Court need not reach that argument.

[14] Fletcher only invokes § 33-820(A) in the portion of his motion to dismiss pertaining to Count Six. (Doc. 6 at 3-4.)

[15] As for Count Six, Plaintiff argues that § 33-820(A) is inapplicable because the complaint alleges that Fletcher did not act "in good faith" and Holladay Bank's evidence to the contrary is "woefully inadequate." (Doc. 14 at 4.) Again, the Court need not reach this argument because Count Five is enough to establish that Fletcher was not fraudulently joined.

### 2. Motion To Dismiss

In addition to advancing the four arguments addressed above, Holladay Bank's response to the motion to remand also attempts to "incorporate[]" the arguments set forth in Holladay Bank's motion to dismiss. (Doc. 11 at 1-2, citing Doc. 4.)

An initial problem with this approach is that Holladay Bank's motion to dismiss only addresses why the claims in Counts 1-6 against Holladay Bank should be dismissed—it doesn't purport to discuss why the claims against Fletcher in Counts 5-6 should be dismissed.[16]

In any event, Holladay Bank's primary dismissal argument concerning Count Five is that "there was no violation of a Court Order in that the Court permitted the Trustee Sale to take place." (Doc. 4 at 11. *See also id.* at 12 ["[T]he fact that the Superior Court . . . approved the Trustee's Sale is proof that there was no violation of a Court Order."].) This is a *non sequitur*. The judge's ruling on May 6, 2019 that Holladay Bank would be allowed to proceed with a trustee's sale isn't the same thing as a ruling that no violations of the receivership order occurred before May 6, 2019. And here, Plaintiff's theory is that Fletcher violated the receivership order by failing to cancel the trustee's sale upon receiving notice of the order in March or April 2019, thereby causing her to incur increased transaction costs.

Holladay Bank's remaining dismissal argument concerning Count Five is that it "did not owe a duty" of care to Plaintiff and, thus, cannot be held liable under a negligence theory. (Doc. 4 at 12.) Plaintiff, in response, identifies several lines of Arizona case law that, in her view, establish that a duty of care existed. (Doc. 9 at 8-10.) Faced with this showing, Holladay Bank is forced to pivot in its reply—after arguing that one of the cases on which Plaintiff relies is factually distinguishable, and not addressing the other cases, it contends that "even if there was a duty, Holladay Bank did not breach that duty for the reasons stated." (Doc. 10 at 7-8.)

---

[16] Fletcher filed a "joinder in and supplement to" Holladay Bank's motion to dismiss, which states that the arguments as to Counts 5 and 6 "equally relate to" him. (Doc. 6.)

- 16 -

Given this backdrop, Holladay Bank has again failed to overcome the heavy presumption against fraudulent joinder. Plaintiff has advanced non-frivolous arguments in support of her claim that a duty of care existed. This Court's role, in the fraudulent-joinder context, isn't to decide whether those arguments will ultimately prove successful—instead, the narrow question is whether Holladay Bank has clearly and convincingly proved that all counts against Fletcher are "wholly insubstantial and frivolous." *Grancare*, 889 F.3d at 548. Holladay Bank hasn't made that showing.

### B. Fletcher's Arguments

In his "joinder and supplement," Fletcher joins in all of Holladay Bank's arguments (including his prior joinders in those arguments). (Doc. 12 at 1.) Those arguments are addressed above.

Fletcher then devotes a few lines to further argument. First, he asserts that "if Fletcher is not a party to this lawsuit, Holladay Bank would have complete diversity with Plaintiff." (*Id.* at 1-2.) This assertion misperceives the issue at hand. Complete diversity would exist irrespective of Fletcher's presence in this action—he is a citizen of Arizona, Plaintiff is a citizen of Ohio, and Holladay Bank is a citizen of Utah. The issue is whether 28 U.S.C. § 1441(b)(2) bars removal despite the existence of complete diversity.

Finally, Fletcher argues that "[t]he addition of Fletcher . . . amounts to an improper joinder of a party for the sole reason to defeat federal jurisdictional authority." (*Id.* at 2.) But the *ipse dixit* that Plaintiff chose to add Fletcher as a defendant to defeat federal jurisdiction begs the question of whether Plaintiff's claims against Fletcher have potential merit. If the claims are not "wholly insubstantial and frivolous," her motivations for including them are generally irrelevant.

Because Defendants have failed to prove fraudulent joinder, Plaintiff's motion to remand will be granted.[17]

…

---

[17] The motion to dismiss (Doc. 4) shall remain pending. *See, e.g.*, *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94 (1998) ("Without jurisdiction the court cannot proceed at all in any cause.").

III. <u>Attorneys' Fees</u>

Plaintiff requests attorneys' fees. (Doc. 7 at 8.) Under 28 U.S.C. § 1447(c), "[a]n order remanding the case may require payment of just costs and any actual expenses, including attorney fees, incurred as a result of the removal." In *Martin v. Franklin Capital Corp.*, 546 U.S. 132 (2005), the Supreme Court observed that nothing in Section 1447(c) "tilt[s] the exercise of discretion in *favor* of fee awards . . . [or] *against* fee awards." *Id.* at 138. Thus, "the standard for awarding fees should turn on the reasonableness of the removal." *Id.* at 141. "Absent unusual circumstances, courts may award attorney's fees under § 1447(c) only where the removing party lacked an objectively reasonable basis for seeking removal." *Id.*

Here, Holladay Bank had an objectively reasonable basis for its removal effort. Although the Court has ruled in Plaintiff's favor, the question of fraudulent joinder presented a debatable issue. Plaintiff's request for attorneys' fees will therefore be denied.

Accordingly,

**IT IS ORDERED** that Plaintiff's motion to remand (Doc. 7) is **granted**. The Clerk of Court shall remand this action to the Maricopa County Superior Court.

**IT IS FURTHER ORDERED** that Plaintiff's request for attorneys' fees is **denied**.

Dated this 23rd day of September, 2020.

Dominic W. Lanza
United States District Judge